IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRENT RYAN HORTON JONES                                            PLAINTIFF

v.                              Civil No.: 5:09-cv-5190

CAPTAIN HOLLY, *et al.*                                          DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Brent Ryan Horton Jones, a resident of Orleans, California, filed this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas, referred this case to the undersigned for the purpose of making a report and recommendation.

I.    **Background**

As this case is before the Court on Defendants' Motion for Summary Judgment, the Court will recite the facts pled by the non-moving party, the Plaintiff. Plaintiff has brought this action against the Defendants in both their official and individual capacities. ECF No. 25, ¶ 34(A).

Plaintiff alleges he was denied medical care, including a delay of medical treatment and denial of medication. Specifically, Plaintiff states that on August 15, 2009, he had a seizure, during which he landed on his neck and head. ECF No. 1, ¶ V. Plaintiff states his head was then bleeding and he was on the ground for about one hour. *Id.* Plaintiff and other people requested an ambulance from Sgt. Fry, but Fry did not call an ambulance. *Id.* Plaintiff still suffers neck pain, "dizzy spells" and blurry vision. *Id.* Plaintiff also states he was not taken for X-rays, an MRI, or other diagnostic testing. *Id.*

Plaintiff was booked into the Benton County Detention center on June 18, 2009, for pending criminal charges. ECF No. 25, ¶ 1. On November 9, 2009, he entered a plea of guilty to various

criminal offenses and was sentenced to incarceration in the Arkansas Department of Correction ("ADC").  *Id.*, ¶ 2.  On January 15, 2010, Plaintiff was transferred to the ADC to serve his sentence. *Id.*, ¶ 3.  He had been incarcerated in Benton County from June 18, 2009 until January 15, 2010.  *Id.*

On the medical questionnaire, which was completed when Plaintiff was booked into Benton County, Plaintiff stated he had Epilepsy and was taking Keppra, Seroquel, Vicodin, and used an inhaler.  *Id.*, ¶ 4(A).   Plaintiff was prescribed Vicodin for carpal tunnel syndrome.  ECF NO. 25, ¶ 4(B).  The inhaler was for asthma and emphysema.  *Id.*, ¶ 4(C).  Seroquel was prescribed for bipolar disorder. *Id.*, ¶ 4(D).  Plaintiff had none of these medications with him when he was booked into the Benton County facility.  *Id.*, ¶ 4(E).

Plaintiff submitted his first medical care request on June 21, 2009, stating he needed medication for "seizures, my bipolar."  *Id.*, ¶ 6(A).  Plaintiff was put on the list to see the doctor in response to this grievance, and he saw the doctor, Dr. Huskins, the next day, June 22, 2009.  ECF No. 25, ¶ 6 (C).  The doctor reported Plaintiff was on multiple medications, and Plaintiff's exam was "negative."  *Id.*  Dr. Huskins then decided Plaintiff's medical records should be obtained.  *Id.*

The next day, on June 23, Nurse Smith faxed a medical authorization, signed by Plaintiff, to Dr. Bensky's office.  *Id.*, ¶ 6(D).  A comprehensive medication list was faxed back, which showed Plaintiff had been prescribed Hydrocodone-Acetaminophen, Keppra, Seroquel, and Advair.  *Id.*, ¶ 6(E).

Beginning June 25, 2009, Plaintiff began receiving Citaloram (Celexa), Keppra, and an inhaler. ECF No. 25, ¶ 6(F).  On June 30, 2009, Plaintiff submitted a medical request which stated he was not receiving all of his medications and inhalers.  *Id.*, ¶ 7(A).  In response, Plaintiff was asked what he was missing, and on July 2, 2009, Plaintiff replied he was missing Vicodin for pain in his left hand

from surgery, Seroquel for bi-polar disorder, and Advair.  *Id.*, ¶ 7(C).  Plaintiff was seen again by Dr. Huskins on July 6, 2009, during which examination Dr.  Huskins noted Plaintiff's affect was good and discontinued the Celexa, but prescribed Mellaril and Tylenol.  *Id.*, ¶ 7(D).

On July 11, 2009, Plaintiff stated the medication given him at bedtime was not working and the dosage needed to be increased, that he was still having "fits" and that he was on a high dosage of Seroquel for these issues.  *Id.*, ¶ 8(A).  Plaintiff states that when he has what he describes as a "fit," he is unable to control his emotions and will cry, becoming irritable and feeling isolated.  ECF No. 25, ¶ 8(B).  Plaintiff also requested that his family mail him all prescriptions.  *Id.*, ¶ 8(A).

Dr.  Huskins saw Plaintiff on July 15, 2009, and he noted that Plaintiff's affect was good, that Plaintiff stayed "chilled" and was having mood swings.  *Id.*, ¶ 8(C).  Dr.  Huskins increased Plaintiff's dosage of Mellaril.  *Id.*  On July 23, 2009, Plaintiff submitted a medical request, stating he believed his medication needed to be increased because he was still having "bi-polar fits," but they were not as severe.  *Id.*, ¶ 9(A).  The next day, Plaintiff saw Dr.  Huskins, who noted Plaintiff's affect had improved and Dr.  Huskins left Plaintiff on Mellaril, but the dosage was increased.  ECF No.  25, ¶ 9(B), (C).

On August 3, 2009, Plaintiff stated he had another "bi-polar fit" the previous night and asked if his medication needed to be increased.  *Id.*, ¶ 10(A).  The nurse responded to Plaintiff's request, stating she would show it to the doctor.  *Id.*, ¶ 10(B).  Plaintiff's dosage was not increased.  *Id.*, ¶ 10(C).

On August 17, 2009, Plaintiff asked via grievance why his bedtime medication had been reduced.  *Id.*, ¶ 11(A).  Additionally, Plaintiff stated he needed head and neck x-rays, a MRI, and EEG testing done.  ECF No.  23, ¶ 11(A).  Plaintiff saw Dr.  Huskins on August 17, 2009, and

continued Plaintiff on Keppra and ordered blood work. *Id.*, ¶ 11 (B). On August 18, 2009, Plaintiff again requested x-rays on his head and neck, stating he would not be surprised if he had a cracked skull or fractured neck, and further stating it was hard to chew and swallow food. *Id.*, ¶12 (A).

Plaintiff saw Dr. Huskins on August 19, 2009, one day after his request. *Id.*, ¶12 (B). Dr. Huskins prescribed three days bed rest and Tylenol. *Id.* The next day, August 20, 2009, Plaintiff asked, via medical request, why his Mellaril had been reduced to 50 mg a day, because he had being doing well on 100 mg a day, and now his "bi-polar fits" were coming back, at times turning into seizures. ECF No. 23, ¶13(A). The nurse responded that she would show Plaintiff's request to the doctor, but Plaintiff's dosage was not increased. *Id.*, ¶ 13(B), (C).

A second medical request was submitted on August 20, 2009, stating Plaintiff had a bad seizure on Sunday, August 16, 2009, and that when Plaintiff fell his neck took most of the impact and that x-rays were needed of his head and neck and he was not getting proper medical treatment. *Id.*, ¶ 13(D). Plaintiff was told his grievance would be forwarded to medical. *Id.*, ¶ 13(E).

On August 24, 2009, Plaintiff submitted a medical request, stating he had a "bi-polar fit," likely caused by his Thioridazine being reduced. *Id.*, ¶14(A). The next day, August 25, 2009, medical records indicate Plaintiff saw Dr. Huskins, who prescribed Mellaril 50 mg twice a day, and Tylenol. ECF No. 25, ¶ 14(B).

On September 3, 2009, Plaintiff stated he was having "bi-polar fits" daily and thought his Thioridazine might need to be "upped." *Id.*, ¶15 (A). The next day, September 4, 2009, Plaintiff was seen by Dr. Huskins who noted Plaintiff's affect was good. *Id.*, ¶15(B). On September 5, 2009, Plaintiff asked why his Mellaril had not been increased yet, stating that when Plaintiff was seen by Dr. Huskins on Friday, Dr. Huskins indicated he was going to change something, but had not. *Id.*

-4-

¶16(A).

On September 7, 2009, Plaintiff complained the medication he had been prescribed to help him sleep did not work. *Id.*, ¶17(A). In response, Plaintiff was told he had been seen by the doctor on September 4, 2009, and had to give the medication a few more days. ECF No. 25, ¶17(B).

On September 12, 2009, Plaintiff submitted another medical request, stating the sleeping medication did not work and inquiring as to when his dosage of Mellaril would be increased because he was still having "fits." *Id.*, ¶18(A). Plaintiff saw Dr. Huskins on September 14, 2009, and Dr. Huskins increased Plaintiff's Mellaril from twice a day to three times a day. *Id.*, ¶18(B).

On October 12, 2009, Plaintiff stated he needed a refill on his Mellaril. *Id.*, ¶19(A). On October 13, 2009, Plaintiff grieved that he should have a mat during lock-down because of his seizures and indicated he had been told by the deputy that a mat had to be approved by the doctor. *Id.*, ¶19(B). The mat request was approved by the doctor. ECF No. 25, ¶ 19(C). On October 13, 2009, Plaintiff submitted a grievance stating that Deputy King had taken his mat and stated the Plaintiff did not have seizures. *Id.*, ¶19(D). Plaintiff stated he was supposed to keep his mat during lock-down. *Id.*

On November 13, 2009, Plaintiff asked for a refill of Mellaril. *Id.*, ¶20(A). The nurse replied she would ask the doctor, and on November 16, 2009, Dr. Huskins prescribed Mellaril. *Id.*, ¶20 (B), (C).

On November 20, 2009, Plaintiff requested an Advair inhaler. ECF No. 25, ¶21(A). In response, Plaintiff was told he had a Ventalin inhaler. *Id.*, ¶21(B). On November 22, 2009, Plaintiff submitted a medical request in reply, stating the Ventalin inhaler was for asthma and the Advair inhaler was needed for emphysema. *Id.*, ¶22 (A). On November 25, 2009, Plaintiff was seen by Dr.

-5-

Huskins. *Id.*, ¶22(B).  Although Plaintiff states Dr.  Huskins did not prescribe an inhaler at this time, *id.*, the medication log shows Plaintiff was given Advair from November 25, 2009, until he transferred to the Arkansas Department of Correction on January 15, 2010.  ECF No.  19-6.

Plaintiff was also prescribed Benadryl on December 9, 2009, after seeing Dr.  Huskins for a rash,  ECF No.  23, ¶23, as well as being prescribed Tussin on December 26, 2009, because of a cough.  *Id.*, ¶24.

In total, Plaintiff agrees he received Keppra, Citalopram, Ventolin, Acetaminophen, Thioridazine, Hydroxyzine, Bendadryl, and Tussin at the dates and times listed in the medication logs. *Id.*, ¶25.  Plaintiff alleges he did not receive Advair.  *Id.*, ¶26.  Plaintiff does agree that all decisions related to his medical treatment and care were made by Dr.  Huskins or the jail nurses.  *Id.*, ¶27.

## II.    Applicable Law

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56 (c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir. 1992).  The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   Discussion

### i.    Official Claims

Plaintiff has sued Defendants in their individual and official capacities.  ECF No.  25, ¶ 34. Plaintiff's official capacity claims are tantamount to suing Benton County.  Official-capacity liability

under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Because *Monell* specifically rejected liability based solely on respondeat superior, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity."  *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994).  Rather, official-capacity liability must be based on deliberate indifference or tacit authorization.  *Id.*  Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels ."  *Monell*, 436 U.S. at 690-91.

In his Response to the Motion for Summary Judgment, ECF No.  23, Plaintiff states the custom or policy leading to the violation of his constitutional rights was "they should have called 911 while I was having a seizure and then still refused the testing and x-rays that should have been done."

Plaintiff cannot sustain his Section 1983 claim against Benton County with just his vague and conclusory allegations that the County had unconstitutional policies.  To withstand the Defendants' Motion for Summary Judgment, he must show some specific deficiency in the County's policies, which evidences a deliberate disregard for the constitutional rights of inmates.  *See Dwares v. City of New York*, 985 F.2d 94, 100 (2nd Cir. 1993) ("mere assertion . . . that a municipality has such a custom or policy [that purportedly caused a violation of the plaintiff's constitutional rights] is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference").  In this case, Plaintiff has not shown any specific policy related to the calling of emergency medical services or the scheduling of diagnostic testing which would cause a constitutional

deprivation, or could be said to show deliberate disregard for the rights of inmates.

Moreover, to the extent Plaintiff is seeking injunctive relief, when a prisoner is no longer subjected to an allegedly unconstitutional or unlawful course of action, the prisoner's claims for declaratory and injunctive relief are moot. *Pratt v. Corr. Corp. of Am.*, 267 Fed. Appx. 482, 2008 WL 612571, *1 (8th Cir. 2008) (table decision) (concluding inmate's 1983 claims for declaratory and injunctive relief were moot when he was transferred to another facility and was no longer subject to alleged unlawful conditions); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (section 1983 claims for declaratory and injunctive relief are moot when plaintiff is no longer subject to alleged unlawful conditions). Plaintiff's claims for injunctive relief are now moot because he is no longer incarcerated in the Benton County Detention Center.

### ii.    <u>Individual Capacity Claims</u>

To succeed on his Eighth Amendment medical claims, a plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence in the treatment of an inmate. *Id.* The standard for "deliberate indifference" includes an objective and a subjective component. *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (*citing Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, plaintiff must show 1) that the medical deprivation was objectively sufficiently serious; and 2) that prison officials subjectively knew about the deprivation and refused to remedy it. A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (*quoting Johnson v. Busby*, 953 F.2d 349,

-8-

351 (8th Cir. 1991)); *see also Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citing *Camberos*, 73 F.3d at 176).

A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate for his medical condition does not give rise to a colorable claim under section 1983. *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir.1991); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir.1990); *Courtney v. Adams*, 528 F.2d 1056 (8th Cir.1976). Likewise, plaintiff's disagreement with the diagnosis of his medical condition is insufficient to state a claim. *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993). Nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment in diagnoses and treatment. *Long v. Nix*, 86 F.3d 761, 765 (8th Cir.1996).

Plaintiff has alleged Defendants were deliberately indifferent to his serious medical needs because (1) 911 was not called for treatment of his injuries as the result of a seizure which occurred on August 16. 2009, (2) diagnostic testing was not ordered for him, and (3) he was denied a medication which had been prescribed to him. The Court will examine each of Plaintiff's claims in turn.

Regarding Plaintiff's claims the Defendants were deliberately indifferent because 911 was not called for treatment of his injuries during a seizure, he alleges Hartgraves and Fry made the decision Plaintiff was not in need of emergency medical attention. Plaintiff agrees the medical decisions were made by the jail medical staff, and also faults Huskins, Smith and Holly for not calling 911 upon his request.

At most, Plaintiff has alleged he was delayed medical care on August 16, 2009, until he was evaluated by Dr. Huskins the next day, on August 17, 2009. "[A]n inmate who claims that delay in

medical treatment rose to the level of a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995). *See also Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(when inmate alleges that delay in treatment rise to level of Eighth Amendment violation, objective seriousness of deprivation should be measured by effect of delay, and to establish this effect inmate must place verifying medical evidence in record).

Plaintiff has submitted no medical evidence establishing the detrimental effect of the delay. His claim involving the alleged delay in treatment following his August 16, 2009, request for treatment therefore fails as a matter of law. In fact, Plaintiff has presented no evidence that any injury occurred, increased, or continued due to emergency services not being called on August 16, 2009. The fact that Plaintiff, who has no medical training, thought he had a serious medical need that required treatment by emergency medical personnel insufficient to establish he had a serious medical need, or that emergency medical care was required. Moreover, Plaintiff has offered no verifiable medical evidence to establish that he was harmed by the delay in seeing a medical professional until the next day. *Cf. Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (inmate who claims about delay in medical treatment must present verifying medical evidence of detrimental effect of delay).

Plaintiff further alleges the Defendants were deliberately indifferent to his medical needs by not ordering diagnostic testing such as x-rays, an EEG, or an MRI. The tests to be ordered, and the appropriate treatment for a given medical condition all involve the exercise of medical judgment. Questions as to whether an X-ray or additional diagnostic techniques or forms of treatment should have been done are issues of medical judgment. *Estelle*, 429 U.S. at 293. At most, Plaintiff's claims appear to be that of negligence which are not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S.

at 107.  Plaintiff's mere disagreement with Dr. Huskins' decision is not the basis for § 1983 liability. *See e.g., Meiur v. Greene County Jail Employees*, 487 F.3d 1115, 118-19 (8th Cir. 2007). *See also Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992)("[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation."). Medical malpractice alone . . . is not actionable under the Eighth Amendment." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir.2008). "For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence . . .. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.* (citations and internal quotation marks omitted).

Finally, Plaintiff has alleged Defendants denied him medical care by not providing him Advair, as was prescribed.  However, Plaintiff has presented no evidence he had a current prescription of Advair when he was booked into the Benton County Detention Center.  When the medical staff requested Plaintiff's current prescriptions from his medical provider, Advair was listed, but it also stated the prescription ended on June 11, 2009, which was before Plaintiff was booked into Benton County.  ECF No. 19-4.  Plaintiff provides no other prescription for Advair, and has failed to establish Defendants had any knowledge of a current prescription which should have been provided to him, and thus can not establish deliberate indifference.

Thus, while Plaintiff may have believed he needed to be prescribed Advair and he had previously been prescribed this medication, a difference of opinion between Plaintiff and the medical personnel who treated him regarding the necessity of his being prescribed certain medication does not give rise to a § 1983 claim. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (mere disagreement with the course of medical treatment is insufficient to state an Eighth Amendment

claim).

Moreover, Plaintiff has presented no evidence that any delay in his receiving prescription medications, or the fact that Dr. Huskins took him off certain prescription medications, had any detrimental impact on his health. *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (inmate who complains about delay in medical treatment must present verifying medical evidence of detrimental effect of delay). I find there are no genuine issues of material fact as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs.

IV.   <u>Conclusion</u>

Accordingly, it is the Report and Recommendation of the undersigned that the Motion for Summary Judgment, ECF No. 17, be **GRANTED** in its entirety.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636 (b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **7th day of March 2011.**

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
U.S. MAGISTRATE JUDGE